IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVONTA THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 21-cv-00187-JPG |
| | ) |
| ROBERT BURNS, | ) |
| JOHN DOE 1, | ) |
| LEE KERSTEN, | ) |
| BOBBY SMITH, | ) |
| THOMAS KUPFERER, | ) |
| C. FALKENBERRY, | ) |
| J. PARTRIDGE, | ) |
| JESSICA BIEN, | ) |
| CAROLINE GROMMER, | ) |
| and LOGAN SIEFERT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Kevonta Thomas, a detainee at Jackson County Jail ("Jail") located in Murphysboro, Illinois, brings this civil rights action pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff claims he has been subjected to unconstitutional conditions of confinement and denied proper mental health treatment at the Jail since 2018. (Doc. 1). Plaintiff names ten defendants for violations of his rights under the Fourteenth Amendment. (*Id*. at 1-7). He seeks declaratory judgment, money damages, and injunctive relief.[1] (*Id*. at 8).

---

[1] Plaintiff specifically requests an injunction compelling the defendants to provide Jackson County Jail detainees with access to on-site mental health professionals, safe suicide cells, additional suicide cells, and staff training to stop the use of metal handcuffs, shackles, and chains to restrain inmates in chairs. (*Id*.). Absent a request for interim relief such as a temporary restraining order or preliminary injunction pursuant to Federal Rule of Civil Procedure 65 ("Rule 65"), the Court interprets Plaintiff's request as one for injunctive relief *at the close of the case*. If he seeks more immediate relief, however, Plaintiff may file a separate motion pursuant to Rule 65 at any time during the pending action.

1

The Complaint is subject to preliminary review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

The Complaint sets forth the following allegations (Doc. 1, pp. 1-7): Plaintiff suffers from serious mental illness, including bipolar disorder, borderline personality disorder, post-traumatic stress disorder (PTSD), and attention deficit and hyperactivity disorder (ADHD). (*Id*. at 3). He has a significant history of self-harm that includes multiple suicide attempts at the Jail dating back to 2018. He has repeatedly tried to end his life by cutting his veins and swallowing sharp objects, resulting in injuries that require surgical intervention. According to Plaintiff, the defendants subjected him to unconstitutional conditions of confinement and the denial of mental health treatment that have created a substantial risk of serious harm to his health and safety.

**A.      Systemic Conditions**

Jackson County Jail offers no option for hospitalization, hospital-level care, suicide prevention services, or crisis care for inmates with severe mental illness. (*Id*. at 4). The Jail has no mental health care providers on staff, no mental health training, and inadequate staffing. (*Id*. at 5). As a result, inmates with serious mental health needs are not identified during booking by the appropriate personnel using proper risk assessment tools. They are not classified according to their mental health needs and treated accordingly.

Deputies decide who requires referral or treatment for mental health issues. They send inmates to a nurse, not a mental health provider, for further care. The deputies lack the qualifications, training, and/or supervision necessary to make these decisions.

Many detainees with serious mental illness decompensate while in custody and require crisis intervention. But, the Jail lacks a sufficient number of crisis or suicide watch cells. The suicide watch cells are poorly equipped,[2] and the segregation cells used for this purpose are unsafe. Staff provide inadequate monitoring of inmates while they are in these cells and then release them back into the general population without appropriate follow-up care.

Sheriff Burns, Lieutenant Kersten, and Sergeant Smith were the officers in charge during the relevant time period. They were aware of these systemic conditions. However, they took no steps to protect Plaintiff and other inmates from the serious risk of harm posed by them.

**B.      Denial of Mental Health Treatment**

Defendants Burns, Doe, Kersten, Smith, Kupferer, and Falkenberry failed to address Plaintiff's mental health issues. They did not complete psychological evaluations of Plaintiff before or after his suicide attempts. They failed to coordinate their treatment of him or develop a consistent plan to curb his self-harm. When he was suicidal, they placed him in unsafe suicide cells or segregation cells where he could access objects to inflict self-harm. Then, they failed to properly monitor him, treat him, or provide follow-up care. These conditions created a substantial risk of serious self-harm and other injurious behaviors, led to further injury, and necessitated surgery.

---

[2] These cells allegedly contain "tie off ligatures" and other sharp objects that can be used to attempt suicide. (*Id*. at 5).

C. **Use of Restraints**

On several occasions,[3] Defendants Smith, Partridge, Bien, Grommar, Siefert, and other unknown officers punished Plaintiff for his suicidal behavior by restraining him in a chair using thick zip ties on both hands and metal handcuffs, shackles, or chains on his wrists and/or ankles. They left him in the chair for days, even weeks, at a time. Deputies denied Plaintiff's requests for mental health and medical treatment. Instead of conducting a psychological evaluation of him, these defendants used the restraint chair to punish him for inflicting self-harm by forcing him to eat and sleep in the chair, denying him access to the restroom, and requiring him to sit in his own waste. While restrained, he lost feeling in his hands and feet, suffered cuts and bruises on his wrists and ankles, developed back pain, and experienced difficulty breathing.

## Discussion

Based on the allegations, the Court finds it convenient to designate the following enumerated counts in the *pro se* Complaint:

**Count 1:** Fourteenth Amendment claim against Kersten and Smith, in their individual capacities, for subjecting Plaintiff to systemic conditions of confinement (as described in Section A) that significantly increased his risk of serious self-harm at the Jail beginning in 2018.

**Count 2:** Fourteenth Amendment claim against Burns, Doe, Kersten, Smith, Kupferer, and Falkenberry, in their individual capacities, for denying Plaintiff mental health care at the Jail beginning in 2018 (as described in Section B).

**Count 3:** Fourteenth Amendment claim against Smith, Partridge, Bien, Grommar, and Siefert, in their individual capacities, for responding to Plaintiff's mental health needs by restraining him in a chair for prolonged periods of time using zip ties, handcuffs, shackles, and chains at the Jail beginning in 2018 (as described in Section C).

---

[3] Plaintiff specifically identified the following dates as some, but not all, instances when he was placed in the restraint chair as punishment for his mental health issues: December 5-12, 2019; January 13-15, 2020; November 27-December 10, 2020. (*Id*. at 7).

> **Count 4:** *Monell* claim against Burns, Kersten, and Smith, in their official capacities, for the policies, customs, or widespread practices of denying mentally ill detainees safe conditions of confinement, including mental health treatment (as described in Section A), in violation of the Fourteenth Amendment, by:
>
>> (a) failing to staff the Jail with mental health professionals;
>>
>> (b) failing to properly train other staff to address mental health issues of inmates using proper screening, identification, prevention, monitoring, treatment, and follow-up care; and
>>
>> (c) housing suicidal inmates in unsafe cells and unsafe conditions.

**Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[4]

Plaintiff indicates that he was a pretrial detainee during the relevant time period. Therefore, his claims arise under the Fourteenth Amendment Due Process Clause, which prohibits all forms of punishment of pretrial detainees. *See Kingsley v. Henderson*, 576 U.S. 389 (2015); *Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). To state a claim under the Fourteenth Amendment, a pretrial detainee must set forth facts suggesting that each defendant "acted purposefully, knowingly, or perhaps even recklessly" in response to conditions posing an excessive risk to his health or safety and that the defendant's actions were "objectively unreasonable." *Miranda*, 900 F.3d at 352-54. Plaintiff's allegations suggest that the defendants knowingly or purposefully responded to an obvious risk of suicide by subjecting Plaintiff to unsafe conditions of confinement (Count 1), inadequate mental health treatment (Count 2) and

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

punishment (Count 3) that was objectively unreasonable. Accordingly, Counts 1, 2, and 3 shall proceed against those individual defendants identified in connection with each claim above.

Plaintiff also alleges that Sheriff Burns, Lieutenant Kersten, and Sergeant Smith, in their official capacities, were responsible for policies, customs, or widespread practices that resulted in violations of his due process rights, in the following respects; (a) by failing to provide adequate mental health staff at the Jail; (b) by failing to properly train staff to address mental health issues of inmates; and (c) by housing suicidal inmates in unsafe cells and unsafe conditions. When a plaintiff sues an individual officer in his official capacity, the official capacity claim generally represents "another way of pleading an action against an entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690 n. 55). The official capacity suit is not against the individual himself, but rather the entity. *Id*. at 166.

Construed liberally, Count 4 against the Jackson County sheriff (Burns), lieutenant (Kersten), and sergeant (Smith), in their official capacities, represents a *Monell* claim against Jackson County itself. A local government body, such as a county, can be held liable under Section 1983, if (a) it had an express policy calling for a constitutional violation; (b) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute custom or usage with the force of law; or (c) a person with final policymaking authority for the body caused the constitutional violation. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978); *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). The allegations suggest that one or more policies, customs, or widespread practices described in the Complaint may have violated Plaintiff's due process rights. At this stage, Count 4 shall receive further review against the three defendants in their official capacities.

**Identification of Unknown Defendant**

Plaintiff shall be allowed to proceed with Count 2 against John Doe 1. However, this defendants must be identified with particularity before service of the Complaint can be made on him. Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of the defendant. *Rodriguez*, 577 F.3d at 832. Sheriff Burns is already named as a defendant, in his official capacity, and he shall be responsible for responding to discovery aimed at identifying the unknown defendant. Once identified, Plaintiff must file a motion to substitute the newly-identified defendant in place of the generic designation in the caption and throughout the Complaint.

**Pending Motion**

Plaintiff's Motion for Recruitment of Counsel (Doc. 7) shall be **GRANTED**. When presented with a request for counsel by an indigent plaintiff, the district court must consider, first, whether the plaintiff has made reasonable attempts to secure counsel and, if so, "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)). Plaintiff has satisfied the *Pruitt* factors. In the motion, Plaintiff has demonstrated that he is unable to locate counsel on his own because of COVID-related restrictions in place at the Jail. Moreover, he requires an attorney to represent him in this matter, given the numerous claims at issue in this case and his significant mental health issues, suicidal tendencies, and grade school education. Accordingly, the Court will randomly select counsel through the Case Management/Electronic Case Filing ("CM/ECF") system to represent Plaintiff *in this case only*.

**Disposition**

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, as follows:

- **COUNT 1** against **KERSTEN** and **SMITH**, in their individual capacities;

- **COUNT 2** against **BURNS, KERSTEN, SMITH, KUPFERER, FALKENBERRY**, and **DOE** (once identified), in their individual capacities;

- **COUNT 3** against **SMITH, PARTRIDGE, BIEN, GROMMAR,** and **SIEFERT**, in their individual capacities; and

- **COUNT 4** against **BURNS, KERSTEN,** and **SMITH**, in their official capacities.

**<u>Because this suit addresses one or more medical claims, the Clerk of Court is DIRECTED to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act</u>**.

**IT IS ORDERED** that all other claims not mentioned above are **DISMISSED** without prejudice from this action.

**IT IS ORDERED** that **ROBERT BURNS**, in his official capacity, is responsible for responding to discovery aimed at identifying the unknown officer (John Doe 1) with particularity.

The Clerk of Court shall prepare for Defendants **BURNS, KERSTEN, SMITH,** in their individual and official capacities, and **KUPFERER, FALKENBERRY**, **PARTRIDGE, BIEN, GROMMAR, SIEFERT,** and, **JOHN DOE 1** (once identified), in their individual capacities: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff.  If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that

defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

## Assignment of Counsel

**IT IS ORDERED** that Plaintiff's Motion for Recruitment of Counsel (Doc. 7) is **GRANTED**. In accordance with 28 U.S.C. § 1915(e)(1) and Local Rule(s) 83.1(i) and 83.9(b), attorney **Brandon B. Copeland** of Brown & James, PC – St. Louis**,** Missouri, is **ASSIGNED** to represent Plaintiff in this civil rights case *only*. On or before **May 19, 2021**, assigned counsel shall enter his appearance in this case. Attorney Copeland is free to share responsibilities with an associate who is also admitted to practice in this district court. Assigned counsel, however, must enter the case and shall make first contact with Plaintiff, explaining that an associate may also be working on the case. Plaintiff should wait for his attorney to contact him in order to allow counsel an opportunity to review the court file.

The Clerk of Court is **DIRECTED** to transmit this Order and copies of the docket sheet and Doc. 1 to attorney Copeland. The electronic case file is available in CM-ECF. **Now that**

**counsel has been assigned, Plaintiff <u>shall not</u> personally file anything in this case, except a pleading that asks that he be allowed to have counsel withdraw from representation.**  If counsel is allowed to withdraw at the request of Plaintiff, there is no guarantee the Court will appoint other counsel to represent Plaintiff.  Counsel is **ADVISED** to consult Local Rules 83.8-83.14 regarding *pro bono* case procedures.

Plaintiff and his counsel are **ADVISED** that, because Plaintiff is proceeding *in forma pauperis*, if there is a monetary recovery in this case (either by verdict or settlement), any unpaid out-of-pocket costs must be paid from the proceeds.  *See* SDIL-LR 3.1(c)(1).  If there is no recovery in the case (or the costs exceed any recovery), the Court has the discretion to reimburse expenses.

Section 2.6 of this Court's Plan for the Administration of the District Court Fund provides for a degree of reimbursement of *pro bono* counsel's out-of-pocket expenses, as funds are available.  The Plan can be found on the Court's website, as well as the form motion for out-of-pocket expenses and an Authorization/Certification for Reimbursement.  Any motion for reimbursement must be made within 30 days from the entry of judgment, or reimbursement will be waived.  *See* SDIL-LR 83.13.  The funds available for this purpose are limited, however, and counsel should use the utmost care when incurring out-of-pocket costs.  In no event will funds be reimbursed if the expenditure is found to be without a proper basis.  The Court has no authority to pay attorney's fees in this case.  No portion of a partial filing fee assessed pursuant to 28 U.S.C. § 1915 will be reimbursed.  Counsel may be reimbursed for PACER fees for this case.

The district court has entered into an agreement with attorney James P. Chapman and the Illinois Institute for Community Law to consult with lawyers on issues in these cases, including substantive and procedural questions (both legal and practical) and dealing with the client.

Mr. Chapman can be reached by phone at (312) 593-6998 or email at JamesPChapman@aol.com. His services are available to counsel free of charge, as long as counsel is representing a prisoner *pro bono* on a case in the district.  In addition, the Court's website, www.ilsd.uscourts.gov, includes a guide for attorneys which is available as a resource.  It is listed under "Rules and Forms" as "Guide for Attorneys Recruited to Represent Plaintiffs in Section 1983 Cases."  The Court encourages appointed counsel to consult it and Mr. Chapman as needed.  As of this date, Plaintiff's contact information is:

**KEVONTA THOMAS**
**Jackson County Jail**
**1001 Mulberry Street**
**Murphysboro, IL 62966**

**IT IS SO ORDERED**.

**DATED: 5/5/2021**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**
